UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.

MORRIS GOLDSTEIN

CASE NO. 8:23-cr-431-TPB-SPF
18 U.S.C. § 1956(h)
26 U.S.C. § 7206(1)

**INFORMATION**

The United States Attorney charges:

**COUNT ONE**
**(Conspiracy to Commit Money Laundering)**

**A.   Introduction**

At all times material to this Information:

1. Defendant MORRIS GOLDSTEIN resided in the Middle District of Florida.

2. In or around 1999, GOLDSTEIN established a Florida corporation known as JMS Enterprise Inc of Largo ("JMS Enterprise").

3. In or around 2014, GOLDSTEIN established a Florida corporation known as M.S.J. Enterprises LLC ("MSJ Enterprises").

4. In or around 2015, GOLDSTEIN established a Florida corporation known as Aspire Marketing Enterprises LLC ("Aspire Marketing").

5. A "merchant account" was a type of financial institution account that provided a way for individuals and businesses to accept debit and credit card payments. These payments were processed using an online portal for online

businesses. Merchant accounts were provided through Independent Sales Organizations ("ISOs") who were agents of a federally-insured financial institution who provided merchant services (an "Acquiring Bank").

6. In order to establish a merchant account, a merchant prepared and submitted an application to an ISO. The application had to provide truthful information about the merchant and the merchant's products so the Acquiring Bank and ISO could determine whether the merchant met the Acquiring Bank's requirements for establishing a merchant account.

7. By accepting a merchant and agreeing to process card sales for the merchant, the Acquiring Bank was responsible for returning card charges to the merchant's customers who disputed their charges.

### B. The Conspiracy

8. Beginning on an unknown date, but from at least in or around March 2015, and continuing through on or about May 18, 2022, in the Middle District of Florida and elsewhere, the defendant,

MORRIS GOLDSTEIN,

did knowingly and voluntarily combine, conspire, confederate, and agree with others, both known and unknown to the United States Attorney, to commit money laundering, to wit, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, did conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which in fact involved the proceeds of specified unlawful activity, that is, bank fraud, in

2

violation of 18 U.S.C. § 1344, knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

### C. Manner and Means of the Conspiracy

9. The manner and means by which the defendant and his coconspirators sought to accomplish the object of the conspiracy included, among others, the following:

  a. It was a part of the conspiracy that GOLDSTEIN and others would and did recruit and hire others (hereinafter the "straw owners"), purportedly to work for Aspire Marketing, in order to obtain and use their personally identifiable information ("PII");

  b. It was a further part of the conspiracy that GOLDSTEIN and others would and did use the PII of the straw owners to create and caused to be created shell companies;

  c. It was a further part of the conspiracy that GOLDSTEIN and others would and did take steps to make the shell companies appear legitimate, including establishing email addresses and websites for the shell companies, obtaining Employer Identification Numbers for the shell companies, and opening and causing to be opened business bank accounts at various financial institutions in the names of the shell companies;

d. It was a further part of the conspiracy that GOLDSTEIN and others would and did apply for merchant accounts in the names of the shell companies;

e. It was a further part of the conspiracy that, to induce federally-insured financial institutions and their agents to open the merchant accounts in the shell companies' names, the conspirators would and did prepare and submit, and cause to be prepared and submitted, merchant account applications to federally-insured financial institutions (the Acquiring Banks), and their agents (the ISOs), that included multiple false and fraudulent representations and pretenses, such as:

   i. stating a business name, owner, address, telephone number, and webpage suggesting that the shell company was in fact owned by the straw owner;

   ii. providing a purported personal guarantee by the straw owner;

   iii. hiding the business affiliation with GOLDSTEIN and/or Aspire Marketing, MSJ Enterprises, and JMS Enterprise;

   iv. stating there were no other currently/previously owned businesses associated with the business applicant; and

   v. affirming the truth of the statements in the application;

f. It was a further part of the conspiracy that the conspirators would and did complete the merchant applications on behalf of the straw owners, and instruct and direct the straw owners to lie and make false representations to, among

4

others, financial institutions and ISOs about the nature of the shell companies by signing the documents and providing a list of answers to questions the ISOs might ask in the underwriting process;

  g. It was a further part of the conspiracy that conspirators would and did use the shell companies' merchant processing accounts to process credit and/or debit cards purportedly relating to the sale of dietary products and/or skin care products for customers who had unwittingly signed up for a monthly subscription for the products;

  h. It was a further part of the conspiracy that because customer complaints about the monthly charges gave rise to a high level of chargebacks and closure of the accounts by the Acquiring Banks and/or ISOs, the conspirators would and did open new shell companies and new merchant accounts and repeat the process;

  i. It was a further part of the conspiracy that the conspirators would and did use the online banking access privileges associated with the shell companies' business bank accounts to make and monitor deposits and withdrawals;

  j. It was a further part of the conspiracy that to conceal and disguise the nature, source, ownership, and control of the bank fraud proceeds obtained through the fraudulent merchant accounts, the conspirators would and did transfer the funds from the merchant accounts between and among accounts controlled by GOLDSTEIN at several different financial institutions, including Bank of Tampa, Bank OZK, Hancock Whitney, and Fifth Third Bank;

k.  It was a further part of the conspiracy that the conspirators would and did engage in multiple monetary transactions to conceal and share the bank fraud proceeds, including through wire transfers to other shell companies controlled by conspirators, through cash withdrawals, and through wire transfers to multiple business and personal accounts controlled by GOLDSTEIN at numerous financial institutions;

l.  It was a further part of the conspiracy that the conspirators would and did share in the fraud proceeds—usually by paying for personal items and expenses, such as luxury vehicles—for their personal enrichment and entertainment and to promote and perpetuate the scheme; and

m.  It was further part of the conspiracy that the conspirators would and did misrepresent, hide, and conceal, and cause to be misrepresented, hidden, and concealed, the purpose of acts performed in furtherance of the conspiracy.

All in violation of 18 U.S.C. § 1956(h).

## COUNT TWO
### (Filing False Federal Tax Returns—26 U.S.C. § 7206(1))

1.  On or about October 14, 2021, in the Middle District of Florida and elsewhere, the defendant,

MORRIS GOLDSTEIN,

did willfully make and subscribe a joint IRS Form 1040, for calendar year 2020, which was verified by a written declaration that it was made under the penalties of perjury, and which the defendant did not believe to be true and correct as to every

material matter, in that, the IRS Form 1040 stated an amount of total income at Line 09 of $314,638.00, which the defendant then and there knew was understated and did not include at least $1,972,421 in income that was generated from Aspire Marketing, JMS Enterprise, and MSJ Enterprises business bank accounts, and subsequently used for personal expenses.

In violation of 26 U.S.C. § 7206(1).

## FORFEITURE

1. The allegations contained in Count One are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 982(a)(1).

2. Upon conviction of a violation of 18 U.S.C. § 1956(h), the defendant,

MORRIS GOLDSTEIN,

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(A), any property constituting, real or personal, involved in such offense, or any property traceable to such property.

3. The property to be forfeited includes, but is not limited to,

   a. The contents of Hancock Whitney account number 62972662, held in the name of Aspire Marketing Enterprises LLC, approximately $5,340.07;

   b. The contents of Hancock Whitney account number 62972670, held in the name of Aspire Marketing Enterprises LLC, approximately $360.52;

c. The contents of Hancock Whitney account number 62972689, held in the name of JMS Enterprise Inc of Largo, approximately $173,797.72;

d. The contents of Hancock Whitney account number 62972697, held in the name of JMS Enterprise Inc of Largo, approximately $511.77;

e. The contents of Hancock Whitney account number 63411273, held in the name of Aspire Marketing Enterprises LLC, approximately $16,027.31;

f. The contents of Hancock Whitney account number 63411281, held in the name of Aspire Marketing Enterprises LLC, approximately $171,598.01;

g. The contents of Hancock Whitney account number 63411303, held in the name of Aspire Marketing Enterprises LLC, approximately $14,343.48;

h. The contents of Hancock Whitney account number 63411710, held in the name of Aspire Marketing Enterprises LLC, approximately $830.51;

i. The contents of Hancock Whitney account number 63411729, held in the name of Aspire Marketing Enterprises LLC, approximately $4,408.45;

    j. The contents of Hancock Whitney account number 63411753, held in the name of JMS Enterprise Inc of Largo, approximately $9,789.02;

    k. The contents of Hancock Whitney account number 64080025 (HW0025), held in the name of Aspire Marketing Enterprises LLC, approximately $146,897.71;

    l. The contents of Fifth Third Bank account number 7974012556, held in the name of Morris Kent Goldstein and Stanley Goldstein, approximately $532,945.24;

    m. The contents of Fifth Third Bank account number 7905591033, held in the name of Morris Kent Goldstein and Stacey Goldstein, approximately $245,000.00;

    n. A 2017 Aston Martin bearing VIN: SCFESBNR9HGS02696,

    o. A 2018 Dodge Challenger bearing VIN: 2C3CDZH90JH101453;

    p. $152,500.00 in United States Currency; and

    q. $18,661.00 in United States Currency.

4. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

  e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. § 853(p), as incorporated by 18 U.S.C § 982(b)(1).

           ROGER B. HANDBERG
           United States Attorney

By: _____
    Rachel K. Jones
    Assistant United States Attorney

By: _____
    Rachelle DesVaux Bedke
    Assistant United States Attorney
    Chief, Economic Crimes Section