AF Approval _____                                    Chief Approval _____

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                  CASE NO.

MORRIS GOLDSTEIN

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, and the defendant, Morris Goldstein, and the attorney for the defendant, Mark J. O'Brien, Esq., mutually agree as follows:

### A.   Particularized Terms

1.   Counts Pleading To

The defendant shall enter a plea of guilty to Counts One and Two of the Information. Count One charges the defendant with money laundering conspiracy, in violation of 18 U.S.C. § 1956(h). Count Two charges the defendant with filing a false federal tax return in violation of 26 U.S.C. § 7206(1).

2.   Maximum Penalties

Count One carries a maximum sentence of twenty years' imprisonment; a fine of up to $500,000, or twice the value of the property involved in the transaction, whichever is greater; a term of supervised release of up to five years; and a special assessment of $100.

Defendant's Initials _MG_

Count Two carries a maximum sentence of three years' imprisonment; a fine of up to $100,000; a term of supervised release of up to one year; and a special assessment of $100.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

3.    Elements of the Offense(s)

The defendant acknowledges understanding the nature and elements of the offense(s) with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

| First: | two or more people agreed to try to accomplish a common and unlawful plan to violate 18 U.S.C. § 1956; and |
|---|---|
| Second: | the defendant knew about the plan's unlawful purpose and voluntarily joined in it. |

The elements of Count Two are:

| One: | the defendant made or caused to be made a joint U.S. Individual Income Tax Return for the year 2020; |
|---|---|
| Two: | the joint U.S. Individual Income Tax Return contained a written declaration that it was made under the penalty of perjury; |
| Three: | when the defendant made or helped to make the joint U.S. Individual Income Tax Return, he knew it contained false material information; |

Defendant's Initials **nku**              2

<u>Four</u>:     when the defendant did so, he intended to do something he knew violated the law; and

<u>Five</u>:     the false matter in the joint U.S. Individual Income Tax Return related to a material statement.

4.    <u>Indictment Waiver</u>

Defendant will waive the right to be charged by way of indictment before a federal grand jury.

5.    <u>No Further Charges</u>

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the facts described in this plea agreement.

6.    <u>Mandatory Restitution to Victim of Offense of Conviction</u>

Pursuant to 18 U.S.C. § 3663A(a) and (b), the defendant agrees to make full restitution to the victim in this case as determined by the Court. In particular, the defendant agrees to pay the total amount of $822,058.00 to the Internal Revenue Service, for tax years 2019 and 2020, and further agrees that the Court may make this term a condition of any sentence of probation or supervised release.

The defendant acknowledges that the final restitution amount will be determined by the Court at the time of sentencing.

Defendant's Initials _MCV_       3

7.    Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

8.    Acceptance of Responsibility—Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit

Defendant's Initials _MEL_          4

referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9.     Cooperation—Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3)

Defendant's Initials *MCV*                5

both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

    10.    Use of Information—Section 1B1.8

        Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

    11.    Cooperation—Responsibilities of Parties

        a.    The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime. However, the defendant understands that the government can make no representation that the Court will

Defendant's Initials _MEL_         6

impose a lesser sentence solely on account of, or in consideration of, such cooperation.

          b.     It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

          (1)     The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

          (2)     The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement. With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby

Defendant's Initials _MEG_       7

agree to reinstatement of such charges by recission of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)    The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)    The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)    The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

Defendant's Initials _MKl_                    8

12.    Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 982(a)(1), whether in the possession or control of the United States, the defendant, or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, the following: the $4,800,000.00 in proceeds the defendant admits he obtained, as the result of the commission of the offenses to which the defendant is pleading guilty, as well as the following, which were involved in the money laundering conspiracy:

    a.    Approximately $5,340.07 seized from Hancock Whitney account number 62972662, held in the name of Aspire Marketing Enterprises LLC;

    b.    Approximately $360.52 seized from Hancock Whitney account number 62972670, held in the name of Aspire Marketing Enterprises LLC;

    c.    Approximately $173,797.72 seized from Hancock Whitney account number 62972689, held in the name of JMS Enterprise Inc of Largo;

    d.    Approximately $511.77 seized from Hancock Whitney account number 62972697, held in the name of JMS Enterprise Inc of Largo;

    e.    Approximately $16,027.31 seized from Hancock Whitney account number 63411273, held in the name of Aspire Marketing Enterprises LLC;

    f.    Approximately $171,598.01 seized from Hancock Whitney account number 63411281, held in the name of Aspire Marketing Enterprises LLC;

Defendant's Initials *MKb*    9

g.      Approximately $14,343.48 seized from Hancock Whitney account number 63411303, held in the name of Aspire Marketing Enterprises LLC;

h.      Approximately $830.51 seized from Hancock Whitney account number 63411710, held in the name of Aspire Marketing Enterprises LLC;

i.      Approximately $4,408.45 seized from Hancock Whitney account number 63411729, held in the name of Aspire Marketing Enterprises LLC;

j.      Approximately $9,789.02 seized from Hancock Whitney account number 63411753, held in the name of JMS Enterprise Inc of Largo;

k.      Approximately $146,897.71 seized from Hancock Whitney account number 64080025 (HW0025), held in the name of Aspire Marketing Enterprises LLC;

l.      Approximately $532,945.24 seized from Fifth Third Bank account number 7974012556, held in the name of Morris Kent Goldstein and Stanley Goldstein;

m.      Approximately $245,000.00 seized from Fifth Third Bank account number 7905591033, held in the name of Morris Kent Goldstein and Stacey Goldstein;

n.      A 2017 Aston Martin bearing VIN: SCFESBNR9HGS02696;

o.      A 2018 Dodge Challenger bearing VIN: 2C3CDZH90JH101453;

p.      Approximately $152,500.00 in United States Currency seized from the defendant's residence on or about May 18, 2022; and

q.      Approximately $18,661.00 in United States Currency seized from 4900 Creekside Drive, Suite G, Clearwater, Florida on or about May 18, 2022.

Defendant's Initials *MKG*                     10

The net proceeds from the forfeiture and sale of any specific asset(s) will be credited to and reduce the amount the United States shall be entitled to forfeit as substitute assets pursuant to 21 U.S.C. § 853(p).

The defendant further agrees to voluntarily liquidate the funds remaining in all additional accounts involved in the scheme (as identified in Exhibit A, filed under seal) and to apply those funds as a voluntary payment in partial satisfaction of his order of forfeiture within 30 days of signing this agreement.

The defendant acknowledges and agrees that (1) the defendant obtained $4,800,000.00 as a result of the commission of the offenses and (2) as a result of the acts and omissions of the defendant, the proceeds not recovered by the United States through the forfeiture of the directly traceable assets listed herein have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence. Therefore, the defendant agrees that, pursuant to 21 U.S.C. § 853(p), the United States is entitled to forfeit any other property of the defendant (substitute assets), up to the amount of proceeds the defendant obtained, as the result of the offenses of conviction and, further, the defendant consents to, and agrees not to oppose, any motion for substitute assets filed by the United States up to the amount of proceeds obtained from commission of the offenses and consents to the entry of the forfeiture order into the Treasury Offset Program.

The defendant additionally agrees that since the criminal proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence, the preliminary and final orders of forfeiture should

Defendant's Initials *MLb*          11

authorize the United States Attorney's Office to conduct discovery (including depositions, interrogatories, requests for production of documents, and the issuance of subpoenas), pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, to help identify, locate, and forfeit substitute assets.

The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence and the United States shall not be limited to the forfeiture of the substitute assets, if any, specifically listed in this plea agreement.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is

Defendant's Initials *MKV*                    12

omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture (including substitute assets) and to transfer custody of such property to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Defendant's Initials _MkV_          13

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

## B.    Standard Terms and Conditions

### 1.    Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as

Defendant's Initials _MKb_                14

to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. To ensure that this obligation is satisfied, the Defendant agrees to deliver a cashier's check, certified check or money order to the Clerk of the Court in the amount of $200, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing. The defendant understands that this agreement imposes no limitation as to fine.

2.     Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

Defendant's Initials *MKL*               15

3.   Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.   Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.   Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party.

Defendant's Initials _AKG_                16

The defendant further agrees to execute any documents requested by the United
States needed to obtain from any third parties any records of assets owned by the
defendant, directly or through a nominee, and, by the execution of this Plea
Agreement, consents to the release of the defendant's tax returns for the previous five
years. The defendant similarly agrees and authorizes the United States Attorney's
Office to provide to, and obtain from, the United States Probation Office, the
financial affidavit, any of the defendant's federal, state, and local tax returns, bank
records and any other financial information concerning the defendant, for the
purpose of making any recommendations to the Court and for collecting any
assessments, fines, restitution, or forfeiture ordered by the Court. The defendant
expressly authorizes the United States Attorney's Office to obtain current credit
reports in order to evaluate the defendant's ability to satisfy any financial obligation
imposed by the Court.

6.   Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor
bound by this agreement. The Court may accept or reject the agreement, or defer a
decision until it has had an opportunity to consider the presentence report prepared
by the United States Probation Office. The defendant understands and acknowledges
that, although the parties are permitted to make recommendations and present
arguments to the Court, the sentence will be determined solely by the Court, with the
assistance of the United States Probation Office. Defendant further understands and
acknowledges that any discussions between defendant or defendant's attorney and

Defendant's Initials  *MKV*               17

the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

      7.     <u>Defendant's Waiver of Right to Appeal the Sentence</u>

      The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

Defendant's Initials **MCb**             18

8.    Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.    Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.    Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that

Defendant's Initials _MKU_                19

defendant has the right to be tried by a jury with the assistance of counsel, the right
to confront and cross-examine the witnesses against defendant, the right against
compulsory self-incrimination, and the right to compulsory process for the
attendance of witnesses to testify in defendant's defense; but, by pleading guilty,
defendant waives or gives up those rights and there will be no trial. The defendant
further understands that if defendant pleads guilty, the Court may ask defendant
questions about the offense or offenses to which defendant pleaded, and if defendant
answers those questions under oath, on the record, and in the presence of counsel (if
any), defendant's answers may later be used against defendant in a prosecution for
perjury or false statement. The defendant also understands that defendant will be
adjudicated guilty of the offenses to which defendant has pleaded and, if any of such
offenses are felonies, may thereby be deprived of certain rights, such as the right to
vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.    Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The
defendant certifies that defendant does hereby admit that the facts set forth below are
true, and were this case to go to trial, the United States would be able to prove those
specific facts and others beyond a reasonable doubt.

## FACTS

At times relevant to the conduct described below, the defendant,
MORRIS GOLDSTEIN, was a resident of the Middle District of Florida. Beginning
on an unknown date, but no later than in or around March 2015, and continuing

Defendant's Initials _MKB_            20

through on or about May 18, 2022, the defendant and his coconspirators agreed to commit money laundering.

Goldstein, while owner of a company called Aspire Marketing Enterprises LLC ("Aspire Marketing"), recruited individuals, referred to as straw owners, with the promise of a steady monthly income in exchange for assisting with credit card processing for Aspire Marketing. Morris Goldstein and others then used the straw owners' personally identifying information ("PII") to form shell companies, open bank accounts, establish websites and email addresses, and submit false and fraudulent applications to card payment facilitators. Goldstein and others then established merchant accounts for the shell companies, through which the shell companies could process credit and/or debit cards purportedly relating to the sale of dietary products and/or skin care products. The newly formed shell companies offered free trials for these products, which then (often) enrolled the purchasers in a monthly subscription. Purchasers often complained to the shell companies, the purchasers' credit card companies, and consumer sites about the fraudulent charges. Because of the complaints, the shell companies were subject to a high level of chargebacks, and the Acquiring Banks and/or Independent Sales Organization ("ISOs") closed the accounts. Morris Goldstein and Aspire Marketing then recruited new nominees and opened new shell companies, so that these new shell companies could acquire new merchant accounts that would (invariably) also be subject to high chargebacks. Morris Goldstein had control of all the funds in the shell companies' bank accounts and used his access to transfer proceeds from the above-described

Defendant's Initials _MG_                21

bank accounts to other Goldstein-controlled accounts. Those funds were used to continue the business, open new accounts, purchase assets, and to launder the fraud proceeds.

In summary, Goldstein caused transactions to occur between approximately 151 shell company bank accounts and with other financial institution accounts consistent with money laundering. For example, as the payment facilitators deposited money into the shell companies' bank accounts, Goldstein transferred the money into other accounts he controlled, specifically, accounts for his companies Aspire Marketing, JMS Enterprise, or MSJ Enterprises, including at least 11 accounts at Hancock Whitney held in the names of these entities, which were seized in or about May 2022. Goldstein then layered the money between other accounts under his control, and then transferred the money once again back into Aspire Marketing, JMS Enterprise, or MSJ Enterprises accounts. Having completed this series of transactions, Goldstein then used the fraud proceeds to purchase assets, promote the illegal activity, and obscure the source of the funds. Specifically, Goldstein used some of the funds to purchase a 2017 Aston Martin and a 2018 Dodge Challenger, and to fund at least two personal accounts held in his name at Fifth Third Bank, which were both seized in or about May 2022.

As an example, the conspirators established shell company [R] Holdings using the PII of C.D. on or about March 5, 2018, and registered the company in Delaware. The conspirators filed a merchant application for [R] Holdings on or about May 3, 2018; the Acquiring Bank associated with the ISO to

Defendant's Initials _MCG_               22

which the application was submitted was a federally insured financial institution. The application listed "C.D." as the sole owner of the shell company (hiding Goldstein and Aspire Marketing's true control of the company), included an email address (created by Goldstein in April 2018), address, and phone number, and identified a bank account at Bank of Tampa in the name of [R] Holdings, indicating [R] Holdings was a real company. The merchant application was filed from Aspire Marketing's business location, and was not filed by C.D. Goldstein was the sole signatory on the Bank of Tampa account, and it was not opened by C.D.

The conspirators filed a second merchant application for [R] Holdings on or about September 7, 2018; the Acquiring Bank associated with the ISO to which the application was submitted was also a federally insured financial institution. The application again listed C.D. as the sole owner of the company (hiding Goldstein and Aspire Marketing's true control of the company), included a different email address (created by Goldstein in August 2018) and listed an account at Bank OZK, indicating [R] Holdings was a real company. The application was filed from Aspire Marketing's business location, and was not filed by C.D. Goldstein was the sole signatory on the Bank OZK account, and it was not opened by C.D. C.D. further stated that in around 2018, C.D. agreed to become an employee of Aspire Marketing and that Goldstein told C.D. that Goldstein would use his information to avoid bank fees.

The [R] Holdings Bank OZK account received numerous deposits from the merchant processing account, many of which were ultimately charged back.

Defendant's Initials **MCb**               23

These were proceeds of the bank fraud. A further review of the account showed money deposited from the ISO was transferred to other accounts controlled by Goldstein.

For example, in early December 2018, Goldstein transferred money from several shell companies, including [R] Holdings, into other accounts that he controlled. On or about December 28, 2018, those funds were wired into a personal account at a different financial institution that Goldstein also controlled. Then in April 2019, Goldstein wired $100,000.00 (that he labeled a "loan") from his personal account to a business account he controlled at yet another financial institution. He then layered the $100,000 between several additional financial institution accounts, primarily through online transfers. He also purchased personal items and made large cash withdrawals.

From in or around March 2015, through in or around May 2022, the defendant and others laundered at least $4,800,000.00 in bank fraud proceeds via the scheme detailed above. The scheme involved fewer than five knowing participants.

On or about October 14, 2021, Goldstein willfully made and subscribed to a materially false joint Form 1040, U.S. Individual Income Tax return for tax year 2020 on which he failed to report at least $1,972,421 earned as income from Aspire Marketing, JMS Enterprises, and MSJ Enterprise (parent companies). The income was received from subsidiaries of the parent companies, which was reported on the subsidiaries' Forms 1120, U.S Corporation Income Tax Return. Subsequently, the income of the subsidiaries funneled to the parent companies'

Defendant's Initials _MCG_                24

Forms 1120S, U.S. Income Tax Return for an S Corporation. The income of the parent companies then flowed through to the defendant's Form 1040, via Schedules K-1, Shareholder's Share of Income, Deductions, Credit, etc. The returns were signed under penalty of perjury and filed with the Internal Revenue Service, and the defendant knew when he made and filed the tax returns that the amount of his income reported was a material fact and that it was not accurate.

12.     Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13.     Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this **17** day of **November**, 2023.

ROGER B. HANDBERG
United States Attorney

Morris Goldstein
Defendant

Mark J. O'Brien, Esq.
Attorney for Defendant

Rachel K. Jones
Assistant United States Attorney

Rachelle DesVaux Bedke
Assistant United States Attorney
Chief, Economic Crimes Section

25